IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

KEVIN HAILEY,

                 Plaintiff,

          v.

CITY OF CAMDEN,

                 Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 14-1018 (JBS/KMW)

**OPINION**

APPEARANCES:

Thomas Bruno, II, Esq.
ABRAMSON & DENENBERG, P.C.
1315 Walnut Street, 12th Floor
Philadelphia, PA 19107
      Attorney for Plaintiff

John C. Eastlack, Jr., Esq.
Daniel Edward Ryback, Esq.
WEIR & PARTNERS LLP
The Liberty View Building
457 Haddonfield Road, Suite 310
Cherry Hill, NJ 08002
      Attorneys for Defendant

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    This matter comes before the Court upon the cross-motions

for summary judgment by Plaintiff Kevin Hailey (hereinafter,

"Plaintiff") and Defendant City of Camden (hereinafter,

"Defendant") [Docket Items 43-44.][1]  Plaintiff, a former Deputy

---

[1] The Court will also address Plaintiff's motion to strike
Defendant's motion for summary judgment. [Docket Item 47.]

Chief in Camden's Fire Department, contends that the deduction of his compensatory ("comp") time from his accrued vacation and sick time was a breach of his employment contract and/or constitutes unjust enrichment.

For the reasons explained below, Plaintiff's motion for summary judgment will denied, and Defendant's motion for summary judgment will be granted in part and denied in part.

## II. BACKGROUND

### A. Factual Background[2]

Plaintiff was hired as a firefighter for the City of Camden Fire Department in 1982. (Pl. SMF at ¶ 1.)  He was promoted to Fire Captain in 1989, and then promoted to Battalion Fire Chief in 1992. (Id. at ¶¶ 2-3.)  On May 10, 2000, the City of Camden came under the control and supervision of the State of New Jersey pursuant to the Local Government Supervision Act of 1947,

---

[2] For purposes of the pending motion, the Court will not retrace every facet of the parties' lengthy history.  For a more detailed discussion of the background of this action, and the underlying events and circumstances leading up to the execution of the parties' 2009 Settlement Agreement, the Court refers interested readers to its prior opinions, see Hailey v. City of Camden, 2015 WL 4394166, at *1-3 (D.N.J. July 16, 2015); Hailey v. City of Camden, 2014 WL 4854527, at *6-9 (D.N.J. Sept. 30, 2014). The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff.  The Court disregards those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), and/or recite factual irrelevancies.  See generally L. Civ. R. 56.1(a).

N.J.S.A. 52:27BB-1 to -100 due to its "unsound financial condition." (Id. at ¶ 5.)  In October 2002, Plaintiff was promoted to Administrative Deputy Fire Chief, a position not subject to the Collective Bargaining Agreement that applied to City of Camden rank and file firefighters. (Id. at ¶¶ 11-12.) As Deputy Fire Chief, Plaintiff's salary was set by Ordinance MC-4113, and he was not entitled to overtime. (Id. at ¶ 13; see Ex. 9 to Def. Br.)  Instead, from 2003 until 2009, the Plaintiff was given sick days, which accrued, vacation days, which accrued, and paid holidays. (Id. at ¶ 14.)

After the State of New Jersey had taken over Camden, in November 2000, Business Administrator Preston Taylor approved Chief Joseph A. Marini's (hereinafter, "Chief Marini") request regarding compensation time for the Deputy Chiefs, and his request to allow retiring Deputy Fire Chiefs Rotchford and Gforer to defer unused vacation time until retirement. (Id. at ¶ 35.)  The 2000 Memorandum approved by Mr. Taylor specifically reiterated that because the "Chief and Deputy Chief are ineligible for overtime compensation," they "are each granted twenty (20) COMP days at 160 annual hours." (Id. at ¶ 36.)  The Memorandum further reiterated that "[a]s a matter of policy COMP time must be used in the year earned, with no allowance for deferral or payment of unused time." (Id. at ¶ 37.)

Then, in a 2001 Memorandum from Chief Marini to new
Business Administrator Norton Bonaparte, Bonaparte approved
Chief Marini's request to carry his compensation days over to
the next year. (Id. at ¶ 39.)  This approval was ratified by
Bonaparte in a 2002 Memorandum to Marini. (Id. at ¶ 40.)  In
April 2003, Christine Tucker became the City of Camden Business
Administrator, and remained in that position for thirteen years.
(Id. at ¶ 9.)  Ms. Tucker approved Chief Marini's compensation
time in a 2004 Memorandum. (Id. at ¶ 41.)[3]  In the same year,
Tucker issued a Memorandum clarifying that certain positions
were not entitled to "comp time," but reiterated that "this
policy does not apply to the uniformed services." (Id. at ¶ 42.)
Tucker admitted that Plaintiff was a member of the uniformed
services. (Id. at ¶ 43.)  Tucker's understanding was that Deputy
Fire Chiefs were entitled to the benefit of comp time until
2009. (Id. at ¶ 44.)

Ms. Tucker received a certified letter from the State
Commission of Investigation ("SCI"), dated August 5, 2008, with
a request for cooperation and to provide all records, in
connection with a State inquiry related to public employment
contracts statewide. (Def. SMF at ¶ 78.)  The SCI report
criticized the use of comp time in the fire department, stating

---

[3] Business Administrator Tucker reported to the Mayor and to the
COO. (Def. SMF at ¶ 75.)

4

there was no official authorization for such use. (Id. at ¶ 79.)
The SCI's audit showed that Chief Marini and his two deputy
chiefs took a combined total of 336.5 comp days between 2003 and
2008, while accumulating sick and vacation leave that could be
cashed in at retirement. (Id.)  On February 23, 2009, Chief
Marini wrote to the COO of Camden, Theodore Z. Davis, and
requested the City continue to permit use of comp time beyond
2008. (Id. at ¶ 42.)  Chief Marini asserted that since the Chief
and Deputy Chiefs are ineligible for overtime pay, pursuant to
an understanding between the Fire Department and the City
Administration, they had been receiving up to 20 comp days per
year since 1991. (Id.) On March 4, 2009, COO Davis replied with
a memorandum revoking the benefit of comp time for Fire
Department Management. (Pl. SMF at ¶ 47.)[4]  Specifically, COO
Davis wrote:

> Frankly Chief, I'm astounded at such activity and find it
> quite reprehensible. Management is entitled to compensatory
> time; this is similar to a president asking the public to
> give him or herself additional money because they had to
> work into the night or on holidays . . . This error must

---

[4] In October 2009, Plaintiff settled a discrimination lawsuit he
had against the City of Camden, and as part of the settlement
agreement, he agreed to retire from the Camden Fire Department
by May 1, 2010, and further agreed to utilize all of his
"accrued sick, vacation, personal or other time" before his
retirement date. (Pl. SMF at ¶¶ 50-51.)  The Agreement further
provided that Plaintiff could challenge the "calculation or
claimed entitlement to any different calculation of accrued
sick, vacation, personal or compensatory/other accrued time."
(Id. at ¶ 52.)

5

cease immediately for it is the obligation of the City not to perpetuate an error or theft of time.

(Def. SMF at ¶ 43; Ex. 11 to Def. Br.)

As a result, on March 20, 2009, COO Davis issued Executive Order No. 5 directed to all City employees, which (1) called for all balances as of December 31, 2008, and thereafter, to be audited and instructed that records would be adjusted if found to be inconsistent with relevant labor contracts, and (2) revoked a memo from the business administrator that provided an exception for accumulated time on the books as of December 31, 2008. (Id. at ¶¶ 44-46; Ex. 12 to Def. Br.)  The COO ordered this audit, to be done of all employees of the City of Camden, to ensure their time was recorded and compensated in accordance with collective bargaining agreements and city ordinances. (Def. SMF at ¶ 81.)

 Pursuant to Executive Order No. 5, Plaintiff's audit was performed on May 28, 2010, and Ms. Tucker then requested payroll to prepare a calculation of what Plaintiff owed the city for overused days. (Def. SMF at ¶ 98; Ex. 20 to Def. Br.)  On June 21, 2010, pursuant to the Administrator's request, a memo was generated calculating Plaintiff's severance that took into account unlawful use of time. (Def. SMF at ¶ 99.)  The final tabulation of Plaintiff's severance calculated his sick days as 5, his vacation days as 6.5, his holiday days as 0 and his comp

time as 0 as of March 7, 2010. (Pl. SMF at ¶ 53.)  After an audit, Plaintiff now had 1 sick day, negative 113.5 vacation days, and negative 6.50 days of comp time. (Id. at ¶ 57.)  The negative 113.5 number was reached by deducting the comp time paid to Plaintiff from 2003 to 2008 from the Plaintiff's accrued vacation and sick time. (Id. at ¶ 58.)  Plaintiff's final severance was determined to be a negative $44,964.82, and as a result of the recalculation of Plaintiff's severance based on the deduction of Plaintiff's paid comp time from his accrued sick and vacation time, Plaintiff owed the City of Camden $44,964.82 upon his retirement on May 1, 2010. (Id. at ¶¶ 59-60.)

Separately, unrelated to any comp time issues, between March 17, 2008 and September 10, 2008, Plaintiff took extended sick leave and "was providing doctors' notes per request and by city policy and fire department policy on a periodic basis." (Def. SMF at ¶¶ 47-49.) Plaintiff's treating physician approved him to return to work at the end of August 2008, but the City's Risk Manager, Martin Hahn, instructed Plaintiff that he could not come back to work until he was evaluated by the city doctor. (Id. at ¶¶ 50-51.) Plaintiff was evaluated by the city's doctor on August 27, 2008 and cleared for duty on September 10, 2008. (Id. at ¶ 53.)  On September 12, 2008, Plaintiff sent an email to Mr. Hahn requesting that his sick time from August 25, 2008,

7

forward, be restored. (Id. at ¶ 54.) Chief Marini then explained to Plaintiff in a September 26, 2008 memorandum that the "[b]asis of municipal policy preserves the City's interest for having personnel who may not be fit for duty following release by a personal Physician, examined to affirm fitness. Indeed there have been past instances where employees released by personal Physician were admitted for duty with further impairment." (Id. at ¶ 55.) Chief Marini concluded that Plaintiff "was subject to the same provisions as all members of the Uniformed Force. To Remain on extended sick leave pending admission for duty." (Id. at ¶ 56.)[5]

**B. Procedural Background**

Plaintiff initially filed a Complaint alleging breach of contract, unjust enrichment and retaliation under 42 U.S.C. §

---

[5] In 2003, Plaintiff had accrued 117 sick days, earned 18 more sick days, and used 3 sick days, leaving him with a balance of 192 sick days that carried over to 2004. (Pl. SMF at ¶ 17.) In 2004, Plaintiff had accrued 192 sick days, earned 18 more sick days, and used 8.5 sick days, leaving him with a balance of 201.5 sick days that carried over to 2005. (Id. at ¶ 20.) In 2005, Plaintiff had accrued 201.5 sick days, earned 18 more sick days, and used 24.5 sick days, leaving him with a balance of 195 sick days that carried over to 2006. (Id. at ¶ 23.) In 2006, Plaintiff had accrued 195 sick days, earned 18 more sick days, and used 17.5 sick days, leaving him with a balance of 195.5 sick days that carried over to 2007. (Id. at ¶ 26.) In 2007, Plaintiff had accrued 195.5 sick days, earned 18 more sick days, and used 74 sick days, leaving him with a balance of 139.5 sick days that carried over to 2008. (Id. at ¶ 29.) In 2008, Plaintiff had accrued 139.5 sick days, earned 18 more sick days, and used 137 sick days, leaving him with a balance of 20.5 sick days that carried over to 2009. (Id. at ¶ 32.)

1981. [Docket Item 1.]  Defendant moved to dismiss the
Complaint, and the Court dismissed Plaintiff's retaliation claim
with prejudice on the basis of res judicata, and dismissed his
claims for breach of contract and unjust enrichment without
prejudice. See Hailey, 2014 WL 4854527, at *5. In his two-count
Amended Complaint, Plaintiff again asserted claims for breach of
contract and unjust enrichment as a result of Defendant's
"miscalculation" of Plaintiff's accrued sick, vacation,
personal, or other compensatory/accrued time.  (See Am. Compl.)
Defendant moved to dismiss the Amended Complaint for failure to
state a claim under the calculation exception of the Settlement
Agreement, but this Court denied Defendant's motion, explaining
that "the exception empowers Plaintiff to present his
'entitlement' to a benefits calculation distinct from that
computed by the State, and therefore preserves a substantial
dispute regarding Plaintiff's retirement benefits." See Hailey,
2015 WL 4394166, at *4.  Plaintiff requests that the Court enter
judgment on behalf of Plaintiff and award him severance without
the deduction of paid comp time, and with interest.

**III. STANDARD OF REVIEW**

     Federal Rule of Civil Procedure 56(a) generally provides
that the "court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact" such
that the movant is "entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a).  A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. Id.  Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable inferences.  Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  However, any such inferences "must flow directly from admissible evidence [,]" because "'an inference based upon [] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'"  Halsey, 750 F.3d at 287 (quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990); citing Anderson, 477 U.S. at 255).

The summary judgment standard is not affected when the parties file cross-motions for summary judgment. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). Such

motions "'are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.' " Transportes Ferreos de Venez. II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). If after review of cross-motions for summary judgment the record reveals no genuine issues of material fact, then judgment will be entered in favor of the deserving party in light of the law and undisputed facts. Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998).

Further, in an unopposed motion, a movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts ("SUMF") receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion. See L. Civ. R. 56.1 (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion"). Accordingly, where a properly filed and supported summary judgment motion is unopposed, it would be an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld, although the

11

Court has discretion to do so if unsatisfied that the law and facts point to judgment as a matter of law.

## IV.  DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

Plaintiff contends that the deduction of his comp time from his accrued vacation and sick time was a breach of his employment contract and/or constitutes unjust enrichment.  At the outset, however, the Court must address Marini v. City of Camden, 2014 WL 4187480 (App. Div. Aug. 26, 2014), an unpublished New Jersey Appellate Division case resolving the issues of comp time for Chief Joseph Marini (Plaintiff's direct supervisor).  The Appellate Division, in reversing the trial court's verdict in favor of Marini, found that Chief Marini was not entitled to comp time because "the awarding of comp time, unsupported by any ordinance, statute or CBA, was not authorized by law," and "[t]he persons who either promised or authorized comp time lacked the authority to bind the City to such an obligation." Marini, 2014 WL 4187480, at *10.  While Plaintiff is correct that this Court is not bound to follow or rely upon Marini in deciding the issues raised by the instant motion, Defendant is also correct that "unpublished state court opinions certainly be considered by a federal court as persuasive authority." (Pl. Br. at 3; Opp'n at 8.)  The Court will consider Marini as persuasive though non-binding precedent, given the

12

similarity in issues between the two cases, as well as the fact that this Court is applying state law, not federal law and welcomes the guidance of the state's second highest court. See Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000)("The opinions of intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'")(citation omitted).

### 1. Business Administrator

First, Plaintiff argues that the Business Administrator had the power to ratify or grant the benefit of comp time and did so in this case; therefore, he is entitled to summary judgment on both the breach of contract and unjust enrichment claims. (Pl. Br. at 4.); see N.J.S.A. § 52:27BB-66.1 (noting that "[t]he [Local Finance Board] may authorize the director to fix the hours and terms and conditions of employment for all municipal employees"). Plaintiff relies on City of Camden v. Kenny, 336 N.J. Super. 53, 60-61 (App. Div. 2000), where the court found that "[t]he City's brief quite properly describes the business administrator as the 'chief operating officer' of the municipality who is 'directly accountable to the mayor.'" Plaintiff argues that under N.J.S.A. § 52:27BB-66.1, there were three Business Administrators with authority to award comp time, and they all ratified or approved the use of comp time for

13

Plaintiff's position. (Pl. Br. at 4-5.)  Moreover, the fact that
COO Davis revoked comp time in his 2009 Memorandum demonstrates
that the awarded of comp time was "the established practice"
beforehand. (Id. at 6.)  Defendant replies that the City's
Business Administrators lacked authority to award comp time, as
it is an ultra vires act unsupported by any ordinance, statute
or collective bargaining agreement. (Opp'n at 2.)  Additionally,
the 2002 passage of the Municipal Rehabilitation and Economic
Recovery Act ("MRERA"), N.J.S.A. 52:27BBB-1 to -65 supports the
position that the position of Business Administrator was not
only a separate and distinct post, but subject to the
supervision of the Chief Operating Officer ("COO"). (Id. at 3.);
see Camden City Bd. of Educ. v. McGreevey, 269 N.J. Super. 592
(App. Div. 2004)(upholding the MRERA).

     In Kenny, the Court found that the Local Government
Supervision Act of 1947 authorized the State to appoint a
business administrator for a municipality like Camden, as the
"strong remedial powers granted [to] the LFB to correct gross
financial failings at the municipal level must prevail over the
general power of the Mayor and City Council to appoint and
confirm a business administrator, as in more normal
circumstances. Kenny, 336 N.J. Super. 61. Plaintiff grossly
mischaracterizes the court's holding in Kenny in arguing that
the Court "made clear in Kenny" that the "person authorized to

14

'fix the hours and terms and conditions of employment for all municipal employees' after the take over, was the Business Administrator, who was the 'chief operating officer' of the City of Camden. (Pl. Br. at 4.) Kenny concerned the issue of whether the State had the power to appoint a business administrator. Even if business administrator was the "chief operating officer" at the time of the Kenny opinion in December 2000, the passage of MRERA in 2002 created a new "chief operating officer" for Camden for a "rehabilitation term" to reorganize municipal governance and finances in conjunction with the mayor and the municipality's governing body. N.J.S.A. 52:27BBB-7 to -30. Defendant presents evidence that before the passage of MRERA, the Business Administrator reported to the Mayor, and after the passage of MRERA in 2002, the Business Administrator reported to the Chief Operating Officer. (Taylor Dep. at 8:11-16)  Any characterization of a "chief operating officer" in Kenny was therefore displaced by the MRERA statutory regime in 2002. Additionally, N.J.S.A. 52:27BB-66.1 states in full that "[T]he board may authorize the director to fix the hours and terms and conditions of employment for all municipal employees, and to appoint and dismiss municipal employees. . ." The "director" is not the business administrator, it is the "the administrative head of the Division of Local Finance in the State Department of Community Affairs." N.J.S.A. 52:27BB-2.  Nowhere in the record

15

is there any indication that any director authorized a business administrator to set comp time. See Marini, 2014 WL 4187480, at *9 ("The only legal authority for defining Marini's work schedule and, consequently, the basis for calculating his severance, was that contained in the DLGS Director's letter. That condition of employment was established by the Director pursuant to legislative mandate and could not be trumped by representations from [business administrators], who lacked such authority.")  While Plaintiff presents evidence that Business Administrators did grant Plaintiff comp time over the years and that it was established practice, neither Kenny nor the post-2000 statutory regime demonstrate that the Business Administrator had the power to grant comp time. As a result, the Court agrees with the Marini court, that "[t]he awarding of comp time, unsupported by any ordinance, statute or CBA, was not authorized by law." Marini, 2014 WL 4187480, at *10. Plaintiff's motion for summary judgment is denied on this ground.

### 2. Unilateral Revocation of a Benefit

Next, Plaintiff argues that because the comp time was approved and Plaintiff was awarded it as a benefit from 2003 to 2008, the City could not unilaterally take it away when calculating the Plaintiff's severance. (Pl. Br. at 7.) Plaintiff explains that comp time was a "use-it-or-lose-it

16

proposition," so since it cannot have accrued, Defendant cannot retroactively revoke the benefit in computing his eventual negative balance. Hailey Dep. 79:16-17. Plaintiff relies on Caponegro v. State Operated School District of the City of Newark, Essex County, 330 N.J. Super. 148 (N.J. App. Div. 2000). There, Plaintiffs were former senior staff members of the Newark Board of Education whose positions were abolished as a result of a State takeover of the public school system. Id. at 151. Plaintiffs sought deferred compensation, including accumulated vacation and sick days. Id. at 155. The court held that "to the extent the pre-takeover contracts of employment . . . require payment of this deferred compensation upon termination of employment, petitioners are entitled to receive it in the same manner as if their employment had been voluntarily terminated." Id. at 157.  The court further explained that a "contractual right to compensable accumulated leave is typically characterized as deferred compensation since it constitutes remuneration for services already rendered and, to the extent already earned, is not subject to unilateral divestment by the employer." Id. at 156 (citing Matter of School Bd. of Morris, 310 N.J. Super. 332, 345-47 (App. Div. 1998)).  Defendant replies that Caponegro is distinguishable because here, Plaintiff had no contractual right to overtime pay, and the grant of comp time to exempt employees was an ultra vires act.

(Opp'n at 5.)  The Court agrees with Defendant, as unlike in

Caponegro, where the Plaintiffs had pre-takeover contracts

outlining payment of deferred compensation, here, no such

contract exists in the record.  Unlike Caponegro, there is a

specific ordinance dated September 22, 2005 that fixed salary

ranges for fire personnel, which stated that "[t]he Fire Chief,

Police Chief and Deputy Chiefs . . . are not entitled to

overtime . . ." Camden, N.J. Ordinance MC-04-3978, § 2; (Ex. 9

to Def. Br.)(emphasis added).  Additionally, as an exempt

employee under the Fair Labor Standards Act ("FLSA"), Plaintiff

was not entitled to overtime, even before the ordinance was

enacted. See 29 U.S.C. § 213.[6]

### 3. Equitable Estoppel

In addition, Plaintiff argues that Defendant is equitably

estopped from contending that comp time was not a benefit under

the Plaintiff's contract of employment with the City and that it

did not breach the contract when it took back the comp time at

severance. (Pl. Br. at 8.)  In other words, Plaintiff argues

that regardless of whether comp time had been duly authorized by

the appropriate person or body, it was a benefit that Plaintiff

earned and was paid, (id. at 8-9), and the City's actions

through the time he served as Deputy Chief support the notion he

---

[6] As Ms. Tucker confirmed, "'Compensatory time' is overtime."
(Ex. K. to Def. Br.)

was entitled to comp time.  Defendant replies that Plaintiff presents no facts or argument to suggest that the City's ratification of comp time was done to induce action on behalf of Plaintiff.

"The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." O'Malley v. Department of Energy, 109 N.J. 309, 317 (1987) (citations omitted).  While equitable estoppel is a "doctrine used to prevent manifest injustice . . . [it] is "rarely invoked against a governmental entity." Royster v. New Jersey State Police, 227 N.J. 482, 496 (2017) (citations omitted). "[I]n deciding whether or not to invoke equitable estoppel against a municipality, a court must focus on the nature of the action taken by the municipality[.]" Wood v. Borough of Wildwood Crest, 319 N.J. Super. 650, 656 (App. Div. 1999).  Additionally, the focus of the estoppel analysis "must be on the conduct of the person or entity who had the authority to act," not on "the conduct of the public official who did not have the authority to act." Maltese v. Township of North Brunswick, 353 N.J. Super 226, 245 (App. Div. 2002).

Here, Plaintiff presents evidence of a November 1, 2000
memo from Chief Marini to Mr. Taylor explaining that "[a]s Chief
and Deputy Chiefs are ineligible for overtime compensation, we
are each granted twenty (20) COMP days at 160 annual hours."
(Ex. H to Pl. Br.)[7]  Plaintiff further explains that not only did
he rely on this memorandum regarding the entitlement to comp
time, but he also relied on "annual timesheets" that came from
the City indicating the entitlement of comp time. Hailey Dep.
90:22 to 91:3; Ex. 10 to Def. Br.  Additionally, Plaintiff
explains that Maurice Wilson, the union president, "confirmed
that [he'd] be receiving comp time." Id. at 12-14.  Plaintiff
believed that based on the November 2000 memo, his interactions
with several COOs, several business administrators, and union
representatives, that he was entitled to comp time and that "it
was deemed to be a good thing for the City of Camden." Id. at
11-25. Plaintiff also explains that unlike Chief Marini, he took
or used his comp time each year that it was earned, and did not
let it accrue.

Here, however, there is no evidence to suggest that any
business administrator, DLGS director, or COO made a knowing and
intentional misrepresentation regarding comp time. Plaintiff
presents evidence that granting comp time was an established

---

[7] Notably, Plaintiff presents no evidence that Chief Marini
actually had authority to determine comp time.

practice, but Defendant counters that it was halted once COO
Davis found out about it in 2009. (Ex. 11 to Def. Br.) In fact,
in 2000, Chief Marini told Mr. Taylor that "[a]s Chiefs and
Deputy Chiefs are ineligible for overtime compensation, we are
each granted twenty (20) COMP days at 160 annual hours. (Ex. 23
to Def. Br.)  No other correspondence between Chief Marini and
the Business Administrators demonstrate any indication of a
misrepresentation.  It appears that no Business Administrator
questioned this "error or theft of time" until COO Davis in
2009. (Ex. 11 to Def. Br.)  The record simply does not reflect
any instance of a knowing and intentional misrepresentation by
an authorized officer of the City of Camden requiring the remedy
of estoppel against this governmental entity.

### 4. Implied Ratification

Finally, Plaintiff argues that Defendant ratified the use
of comp time for the Plaintiff from 2003 to 2008 because all
three Business Administrators who were employed after the State
took over ratified or approved comp time. (Pl. Br. at 9-10.)
Defendant replies that the doctrine can "be applied only when
conduct sought to be ratified is lawful," and here, the approval
of comp time by the Business Administrators is ultra vires.
(Opp'n at 7-8.)

The doctrine of implied ratification applies to individuals
and municipalities when there is sufficient evidence "to affirm

the unauthorized act of [the municipality's] agent." <u>Casamasino</u> <u>v. City of Jersey City</u>, 158 N.J. 333, 345 (1999)(citing <u>Johnson</u> <u>v. Hospital Service Plan of New Jersey</u>, 25 N.J. 134 (1957). "The proper inquiry is whether any conduct by "the entity that had the authority to act and provide plaintiff the benefits as promised . . . manifested an intention to ratify or affirm the unauthorized actions of the [business administrators]." <u>Maltese</u>, 353 N.J. Super. at 542. "Any conduct on the part of the municipality reasonably evidencing approval of the unauthorized transaction will suffice." <u>Id.</u> at 542-43 (citations omitted). "The form of that action <u>must be by resolution or ordinance</u> and with full knowledge of all the facts and with the intent to grant plaintiff the benefits promised." <u>Id.</u> at 543 (emphasis added).

Here, the Court again sees no reason to depart with the holding of the <u>Marini</u> court that "[t]he awarding of comp time, unsupported by any ordinance, statute or CBA, was not authorized by law." <u>Marini</u>, 2014 WL 4187480, at *10, so the Court finds that the Business Administrator's ratification of comp time between 2003-2008 was an unlawful <u>ultra</u> <u>vires</u> act as a matter of law, as described <u>supra</u>.  As a result, Plaintiff's motion for summary judgment is denied.

**B. Plaintiff's Motion to Strike**

Before moving to Defendant's cross-motion for summary judgment, the Court first addresses Plaintiff's motion to strike Defendant's motion for summary judgment for failure to comply with L. Civ. R. 56.1. [Docket Item 47.]  Specifically, Plaintiff alleges that Defendant did not file a Statement of Material Facts Not In Dispute, and instead, submitted a "Statement of Material Facts," which was "clearly not meant to be a Statement of Material Facts Not in Dispute, nor can it be construed as such." (Pl. Mot. to Strike at ¶ 5.)  Additionally, Plaintiff alleges that Defendant's Statement of Material Facts "includes not only disputed facts, but also conclusions of law, and 'evidence' that would not be admissible at trial." (Id. at ¶ 10.), while also quoting from portions of Marini, the related unpublished Appellate Division opinion.

The Court declines to strike Defendant's motion for summary judgment.  Defendant appropriately states facts from the record, in separate paragraphs, with appropriate cites, and what the statement is called is less significant than what the statement contains.  See Stuckman v. Atlantic Cty. Justice Facility Staff, No. 10-4754, 2012 WL 266356, at *1 n.1 (D.N.J. Jan. 30, 2012)("[T]he Court finds the Defendants' factual representations to be well-organized with citations to the record, in substantial compliance with L. Civ. R. 56.1(a). Therefore, the

23

Court will not deny summary judgment on these procedural grounds and will also address the merits of Defendants' motion.") To the extent that Defendant states any legal conclusions, the Court disregards them, as it must, but it will not otherwise undertake the extraordinary sanction of striking the entire motion, as Plaintiff requests. See L. Civ. R. 56.1 (mandating that the parties' statements of material fact "shall not contain legal argument or conclusions of law"). Plaintiff takes issue with the "29 paragraphs quoting from, and drawing legal conclusions from" Marini v. City of Camden, 2014 WL 4187480 (App. Div. Aug 26, 2014). (Pl. Mot. to Strike Br. at 4.) While the introduction of the Marini opinion is certainly relevant to Defendant's collateral estoppel argument in terms of what issues were determined by the prior judgment, see infra, it is not appropriate to insert legal conclusions in the statement of undisputed material facts; instead, it should leave the argument for its briefing. Therefore, Plaintiff's Motion to Strike/Dismiss and or Deny Defendant's Motion for Summary Judgment is denied.[8] See Owens v. Am. Hardware Mut. Ins. Co., No. 11-6663, 2012 WL 6761818 (D.N.J. Dec. 31, 2012)("The proper response to a procedurally correct Rule 56 motion is to file a

---

[8] The Court will therefore treat Defendant's motion for summary judgment as unopposed, as Plaintiff did not file any opposition besides the motion to strike.

counter statement that denies the fact is material, admits the material fact, or denies the material fact by counter proofs conforming to the rules of evidence.").[9]

### C. Defendant's Motion for Summary Judgment

Next, the Court proceeds to evaluate Defendant's unopposed motion for summary judgment on the merits.

#### 1. Collateral Estoppel

First, Defendant argues that the issues of accrual and use of compensatory time, the city's reduction of severance pay for unused vacation time, and the calculation of severance pay based on the length of the workday all have been adjudicated in Marini v. City of Camden, 2014 WL 4187480 (App. Div. Aug. 26, 2014), previously summarized .[10] The doctrine of collateral estoppel is intended to avoid repetitive litigation, permit parties to rely on prior judgments, and allow an adversary a sense of repose

---

[9] Even assuming that Defendant's motion contained some legal conclusions, "this is not a basis for denial [of the motion]." Everest Reinsur. Co. v. Int'l. Aerospace Ins., No. 11-5332, 2012 WL 3638702 (D.N.J. Aug. 22, 2012). Instead, the Court would simply disregard those conclusions.

[10] While R. 1:36-3 states that "[n]o unpublished opinion shall constitute precedent or be binding upon any court," it goes on to state "and except to the extent required by res judicata, collateral estoppel . . . no unpublished opinion shall by cited by any court." See Keith v. Itoyama, No. 06-424, 2006 WL 3069481, at *18 (D.N.J. Oct. 27, 2006)(explaining that if the Court were to accept Plaintiff's position [that it could not rely on an unpublished opinion], "the entire concepts of collateral estoppel [and] res judicata would be turned on their heads").

following the resolution of an issue by the courts. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 4416 (2d ed. 2002).  In order to determine the preclusive effect of a prior state court proceeding, a federal court looks to the law of the adjudicating state, here, New Jersey. Greenleaf v. Garlock, Inc., 174 F.3d 210, 214 (3d Cir. 1997); Cf. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001) (holding that the preclusion law to be applied is that of "the State in which the federal diversity court sits.").

New Jersey courts require the party asserting collateral estoppel (here, Defendant) to demonstrate five elements:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

State v. Brown, 394 N.J. Super. 492, 502 (App. Div. 2007).

The first four elements appear to be easily satisfied, as (1) the issues of comp time, reduction of severance pay for unused vacation time, and calculation of severance pay based on length of workday in the two cases are identical, (2) the three issues were actually litigated in both cases, (3) the Appellate Division issued a final judgment on the merits of Marini's case

and the Supreme Court of New Jersey denied certification, see
Marini v. City of Camden, 220 N.J. 268 (2015), and (4) the
determination of the three issues were essential to the prior
judgment because Marini's judgment was reversed in its entirety
on appeal. However, the fifth element, privity, requires a
closer analysis. (Def. Br. at 25.) Simply put, for collateral-
estoppel purposes, "the question to be decided is whether a
party has had his day in court on an issue." State v. K.P.S.,
221 N.J. 266, 278 (2015)(citing McAndrew v. Mularchuk, 38 N.J.
156, 161 (1962).  In short, collateral estoppel will not apply
if a party did not have a "full and fair opportunity to litigate
the issue." Zirger v. General Accident Insurance Co., 144 N.J.
327, 338 (1996)  (internal quotation marks omitted).

     In Zirger, 144 N.J. at 337, the New Jersey Supreme Court
explained that a non-party to an earlier adjudication could
usually only be considered to be in privity with one of the
parties "when the party is a virtual representative of the non-
party, or when the non-party actually controls the litigation."
Id. at 338.[11]

---

[11] The Court notes that in Nationwide Mutual Fire Ins. Co. v.
George V. Hamilton, Inc., 571 F.3d 299 (3d Cir. 2009), the Third
Circuit explicitly rejected the "virtual representative"
definition: "privity requires a prior legal or representative
relationship between a party to the prior action and the
nonparty against whom estoppel is asserted." Id. at 312
(applying holding in Taylor v. Sturgell, 553 U.S. 880 (2008)).

The Court finds that Plaintiff was not in privity with Marini, thereby preventing the application of collateral estoppel to this matter.  Defendant argues that "Plaintiff testified he was aware of Marini's lawsuit, yet failed to intervene, and is now attempting to re-litigate the exact same lawsuit." (Def. Br. at ¶ 25.)  But general awareness of Marini's suit not sufficient to consider Plaintiff and Marini as parties in privity.  Plaintiff was not a party to Marini's case, and Marini was not Plaintiff's "virtual representative" because Plaintiff did not control the arguments that Marini was permitted to advance on his own behalf.  Each was represented by his own attorney, each submitted separate briefing in separate cases, and each had the right to advance arguments with supporting authority emphasizing his own individual viewpoints. No legal or representative relationship existed between Plaintiff and Chief Marini.  Moreover, as Plaintiff explains, unlike Marini, he was "not the authority in the fire department," as he "could not possibly grant [himself comp] time." (Hailey Dep. 51:18-20.)  Certainly there are common issues between the predicaments of Plaintiff and Chief Marini, specifically severance pay calculation based on a ten hour

---

As the Court will explain, under either definition of privity, Defendant's argument fails.

workday, entitlement to comp time based on past practice, and
reduction of unused vacation time in severance payments, but
that does not necessarily mean that the parties are in privity.
The Court finds that Plaintiff and Marini are not in privity,
therefore precluding the application of collateral estoppel in
this matter.

### 2. Res Judicata

Next, Defendant takes issue with Plaintiff's claim that
Defendant intentionally miscalculated his sick leave time, that
instead of one day, Plaintiff should have been compensated for
nine days.  Defendant argues that Plaintiff cannot bring a claim
against the City for requiring him to use sick leave pending
clearance from a city doctor to return to work after extended
sick leave because it is barred by the doctrine of res judicata.
(Def. Br. at 30.)  Specifically, Defendant argues that
"[a]lthough Plaintiff attempts to couch this allegation as a
dispute with the City's method of calculating his severance
package, it is in fact a claim in tort," which would be covered
by the previous settlement agreement. (Id.)  The 2009 Settlement
Agreement and General Release explicitly precludes Plaintiff
from bringing any future claims "arising out of their employment
with the City of Camden or the City of Camden Fire Department
and for any and all reasons, including, but not limited to
claims of employment discrimination . . . or any other federal,

state or local law or ordinances or collective bargaining
agreement and any common law claims under tort, contract, or any
other theories now or hereafter recognized as well as any claims
under any Camden City or Camden City Fire Department policy, by-
law, handbook, and/or plan." (Ex. 2 to Def. Br.)

Claim preclusion—the form of res judicata applicable in
this instance—prevents claims between the same parties from
being litigated anew subsequent to the entry of final judgment
in the prior lawsuit.  See Duhaney v. Att'y Gen. of U.S., 621
F.3d 340, 347 (3d Cir. 2010). The application of claim
preclusion therefore endeavors to "relieve parties of the cost
and vexation of multiple lawsuits, [to] conserve judicial
resources, and, by preventing inconsistent decisions, [to]
encourage reliance on adjudication." Allen v. McCurry, 449 U.S.
90, 94 (1980); see also Gage v. Warrant Twp. Comm. & Planning
Bd. Members, 463 F. App'x 68, 72 (3d Cir. 2012) ("The doctrine
of claim preclusion is 'central to the purpose for which civil
courts have been established, the conclusive resolution of
disputes,' and seeks to avoid the expense and vexation of
multiple lawsuits, while conserving judicial resources and
fostering reliance on judicial action by minimizing the
possibility of inconsistent decisions.").

To establish claim preclusion, the defendant must
demonstrate that there has been "'(1) a final judgment on the

merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.' Duhaney, 621 F.3d at 347 (quoting In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008)). Importantly, when an action is filed that is already the subject of a prior Settlement Agreement from a prior action, the new action is barred by res judiciata. Toscano v. Connecticut General Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008).

The Court finds that there is a genuine dispute of material fact regarding whether Plaintiff's sick leave claim is covered by the Settlement Agreement and would therefore be barred by res judicata. Defendant presents evidence in the form of a November 13, 2008 Memorandum from Michiel Hannah of the Affirmative Action Office to Plaintiff explaining that Plaintiff had "submitted a complaint alleging Discrimination" because he was told that he had to use sick time after having been told that he could not report back to work by the Risk Manager. (Ex. 28 to Def. Br.) As a result, Defendant argues that it is "very apparent" that Plaintiff's allegations regarding sick leave are unrelated to Defendant's severance calculation. (Def. Br. at 33.) But the Court previously found that the calculation exception of the Settlement Agreement includes "Plaintiff's right to challenge his 'audited time as calculated by the State for the City of Camden' and/or to claim "entitlement to a

<u>different calculation</u> of accrued sick, vacation, personal or compensatory/other accrued time." <u>Hailey</u>, 2015 WL 439416, at *4 (emphasis added).[12]  Plaintiff explains that his severance package was "wrongfully calculated" because of "[t]he fact that there were a number of days that [he] was not credited for, such as the nine days [in dispute]." Hailey Dep. 77:7-11.  Given this Court's prior construction of the calculation exception of the Settlement Agreement, the Court finds that <u>res judicata</u> does not bar Plaintiff's sick leave claim.

### 3. Breach of Contract

Next, Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff is unable to demonstrate that a contract establishing the entitlement of comp time even exists. "To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain[] damages." <u>EnviroFinance Group, LLC v. Environmental Barrier Co., LLC</u>, 440 N.J. Super. 325, 345 (App. Div. 2015) (citations omitted).  In New Jersey, to prevail on a

---

[12] The Court added that "[r]ather, the exception empowers Plaintiff to present his "entitlement" to a benefits calculation distinct from that computed by the State, and therefore preserves a substantial dispute regarding Plaintiff's retirement benefits." <u>Hailey</u>, 2015 WL 4394166, at *4.

breach of contract claim, Plaintiff has the burden to prove four
elements: (1) a valid contract "containing certain terms," (2)
plaintiff "did what the contract required him to do," (3)
defendant's breach of the contract, and (4) damages resulting
from that breach. See Globe Motor Co. v. Igdalev, 139 A.3d 57,
64 (N.J. 2016) (citations omitted). "Each element must be proven
by a preponderance of the evidence." Id.  In his Amended
Complaint, Plaintiff states that "[t]he [November 1,] 2000 memo
and Plaintiff's employment contract created contracts that
required the Defendant to pay the Plaintiff his retirement
benefits, including his severance pay, sick pay, college credits
and comp time." [Docket Item 20 at ¶ 30.]  Plaintiff further
contended that Defendant "breached the above agreements with
Plaintiff by grossly miscalculating Plaintiff's retirement
benefits and denying him his comp time, and the full amount of
sick pay, college credits and severance pay that he was owed,"
while further breaching the November 1, 2000 memo "by
unilaterally rescinding it in 2009 and dialing to pay the comp
time he was entitled to from 2009 to the time of his retirement
in June of 2010." [Id. at ¶¶ 31-32.]

    Plaintiff has failed to put forth evidence of a valid
contract containing the terms for comp time, so he has failed to
meet the first element a contract claim.  Plaintiff did not
produce his employment contract for the record, and the November

1, 2000 memo where Marini explains to Mr. Tucker that "we are
each granted twenty (20) COMP days at 160 annual hours" cannot,
standing alone, reasonably be construed as a valid contract
establishing mutual assent between Plaintiff and Defendant, as
not only was the memorandum sent from Marini to Mr. Taylor on
behalf of the two retiring Deputy Chiefs, but Plaintiff did not
even become Deputy Chief until two years after the memo was
written. (Ex. 23 to Def. Br.)  Moreover, as the Court found in
Marini, "[t]he awarding of comp time, unsupported by any
ordinance, statute or CBA, was not authorized by law," and
"[t]he persons who either promised or authorized comp time
lacked the authority to bind the City to such an obligation."
Marini, 2014 WL 4187480, at *10.  It is inconceivable that an
action that was determined to not be legal could be construed to
create a governmental contractual obligation.  The Court finds
no reason to depart from the finding of Marini, despite the fact
that it is an unpublished opinion.  As a result, the Court finds
that no reasonable jury could find that any contract involving
Plaintiff's comp time exists; therefore, summary judgment for
Defendant is appropriate.

### 4. Unjust Enrichment

Finally, Defendant moves for summary judgment on
Plaintiff's unjust enrichment claim.  In his Amended Complaint,
Plaintiff contended that Defendant "received the benefit of

Plaintiff working numerous hours worth of comp time, and not
providing the Plaintiff the sick pay, college credits and
severance pay he was entitled to;" thus, "[i]t would be unjust
for the Defendant to retain the benefit of Plaintiff's services
without paying him the money he was owed. [Id. at ¶¶ 34-35.]
Defendant argues that Plaintiff derived unjust compensation
because deputy chiefs were not eligible for overtime pay, yet
"they compensated themselves anyway by taking off up to 20 days
per year, in addition to time allotted for sick and vacation
days." (Def. Br. at 36.)

       To establish unjust enrichment, "a plaintiff must show both
that defendant received a benefit and that retention of that
benefit without payment would be unjust." VRG Corp. v. GKN
Realty Corp., 135 N.J. 539, 554 (1994).  Here, as the Marini
court found noted, a 2009 State Commission of Investigation
Report "criticized the use of comp time in the fire department,
stating there was no official authorization for such use," and
documenting findings that Plaintiff, Marini, and Deputy Chief
Quinn "took a combined total of 336.5 comp days between 2003 and
2008, while accumulating sick and vacation leave that could be
cashed in at retirement." Marini, 2014 WL 4187480, at *4. n.5.
Defendant also offers unrefuted evidence that COO Davis
described Plaintiff using comp time as "reprehensible" and
equating it to a "president asking the public to give him or

herself additional money because they had to work into the night or on holidays . . . [t]his error must cease immediately for it is the obligation of the City not to perpetuate an error or theft of time." (Ex. 11 to Def. Br.).  As a result, no reasonable jury could find that Defendant retaining Plaintiff's comp time money would be unjust, and Defendant is entitled to summary judgment upon the unjust enrichment claim.

**V.   CONCLUSION**

For the above reasons, the Court denies Plaintiff's cross-motion for summary judgment, denies Plaintiff's motion to strike Defendant's cross-motion for summary judgment, and grants in part and denies in part Defendant's cross-motion for summary judgment; Defendant is entitled to summary judgment upon Plaintiff's claims for breach of contract and unjust enrichment, while summary judgment is denied with respect to computation of sick leave.  An accompanying Order will be entered.


**June 20, 2017**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           U.S. District Judge